UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYDIA TSCHOE,<br><br>               Plaintiff,<br><br>    - against -<br><br>MONARCH RECOVERY<br>MANAGEMENT, INC.,<br><br>               Defendant. | **MEMORANDUM**<br>**OPINION & ORDER**<br><br>20 Civ. 7331 (PGG)<br>20 Civ. 7893 (PGG) |
| TZVI GOLDRING, individually and on<br>behalf of all other similarly situated<br>consumers,<br><br>               Plaintiff,<br><br>    - against -<br><br>MONARCH RECOVERY<br>MANAGEMENT, INC.,<br><br>               Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

Tzvi Goldring, on behalf of himself and a class of similarly situated consumers,

and Lydia Tschoe, on behalf of herself, allege that Defendant Monarch Recovery Management

("Monarch"), a debt collection agency, has violated the Fair Debt Collection Practices Act (the

"FDCPA"), 15 U.S.C. § 1692 et seq., by sending out collection letters that do not advise

consumers that any request for (1) verification of a debt, or (2) the name and address of the

original creditor, must be made in writing. (See Goldring, 20 Civ. 7893, Dkt. No. 1-1 (Notice of

Removal, Ex. A) (Cmplt.); <u>Tschoe</u>, 20 Civ. 7331, Dkt. No. 1-1 (Notice of Removal, Ex. A) (Cmplt.))[1]

In each case, Monarch has moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that its collection letters do not violate the FDCPA. (<u>Goldring</u>, 20 Civ. 7893 (Dkt. No. 44); <u>Tschoe</u>, 20 Civ. 7331 (Dkt. No. 28)) In moving for summary judgment, Monarch has not argued that Goldring and Tschoe lack standing.

In <u>Goldring</u>, Plaintiff has cross-moved for summary judgment on his FDCPA claim, and has also moved to certify a class under Fed. R. Civ. P. 23(b)(3). (<u>Goldring</u>, 20 Civ. 7893 (Dkt. Nos. 50, 52)) In opposing Goldring's motion for class certification, Monarch argues, <u>inter alia</u>, that Goldring has not demonstrated Article III standing, given that he has not shown any concrete injury under <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413 (2021). (<u>Id.</u>, Dkt. No. 39 (Def. Class Cert. Opp.) at 6-9)

After reviewing the complaints in these actions and the record as presented by the parties, the Court is concerned that neither Goldring nor Tschoe has adequately pled or proffered evidence of injury sufficient to demonstrate Article III standing under <u>TransUnion</u>. Absent proof of Article III standing, this Court lacks subject matter jurisdiction. <u>See</u> <u>Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision</u>, 16 F.4th 67, 78 (2d Cir. 2021) ("[B]ecause the question of standing goes to the constitutional limitations on the 'judicial Power of the United States,' which is limited to

---

[1] Because both cases are premised on the same alleged FDCPA violation based on the same form collection letter, discovery and briefing in these actions has proceeded in tandem. <u>See</u> <u>Goldring</u>, 20 Civ. 7893, Dkt. No. 10 (Case Management Plan); <u>Tschoe</u>, 20 Civ. 7331, Dkt. No. 12 (Case Management Plan), Dkt. No. 20 (order setting common schedule for summary judgment briefing in <u>Tschoe</u> and <u>Goldring</u> and for class certification briefing in <u>Goldring</u>), Jan. 7, 2021 Conf. Tr. (Dkt. No. 35) at 5:4-7. Accordingly, this opinion addresses the parties' motions in both cases.

resolving 'Cases' or 'Controversies,' U.S. Const. art. III, [courts] 'are entitled at any time <u>sua</u> <u>sponte</u> to delve into the issue' of standing even if defendants do not raise the issue") (quoting <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.,</u> 109 F.3d 105, 108 (2d Cir. 1997)); <u>see also</u> <u>Lopez v. Monarch Recovery Mgmt., Inc.,</u> No. 20-CV-3065 (WFK) (TAM), 2022 WL 4238623, at *1 (E.D.N.Y. Sept. 14, 2022) (dismissing FDCPA action <u>sua</u> <u>sponte</u> for lack of standing at summary judgment); <u>Juliano v. Citygroup, N.A.,</u> 626 F. Supp. 2d 317, 318 (E.D.N.Y. 2009) ("[A] district court has an unflagging duty to raise the issue [of subject matter jurisdiction] <u>sua</u> <u>sponte</u> whenever jurisdiction appears to be lacking.").

    Accordingly, the motions and cross-motion for summary judgment will be denied without prejudice because of the Court's concern that it may lack subject matter jurisdiction. Goldring's motion for class certification will likewise be denied without prejudice because of his failure to demonstrate Article III standing.

    In their summary judgment briefing, Monarch, Goldring, and Tschoe do not address standing. Accordingly, Goldring and Tschoe will show cause by **April 5, 2024**, why their actions should not be dismissed for failure to proffer evidence of Article III standing. Monarch will respond to Plaintiffs' show cause papers by **April 19, 2024**.

<b><u>BACKGROUND</u></b>

## I. <u>FACTS</u>

###  A. <u>The Parties</u>

    Defendant Monarch is a Pennsylvania corporation "doing business" in New York. Monarch's business is debt collection. (<u>Goldring</u>, 20 Civ. 7893, Dkt. No. 1-1 (Cmplt.) ¶ 5); <u>Tschoe</u>, 20 Civ. 7331, Dkt. No. 1-1 (Cmplt.) ¶ 3)

    Plaintiff Goldring is a New York resident. (<u>Goldring</u>, 20 Civ. 7893, Dkt. No. 1-1 (Cmplt.) ¶ 4) At some point before June 17, 2020, Goldring incurred a debt of $7,726.56 to

3

Barclays Bank Delaware.  (Id., Dkt. No. 46-3 (Mazzacano Decl., Ex. C (Monarch June 18, 2020

Ltr. to Goldring)); Dkt. No. 57 (Pltf. R. 56.1 Counterstmt.) ¶ 2)  Barclays Bank Delaware sold

the debt to First Portfolio Ventures I, LLC, which in turn referred the debt to Monarch for

collection on June 17, 2020.  (Id., Dkt. No. 57 (Pltf. R. 56.1 Counterstmt.) ¶ 1)

Plaintiff Lydia Tschoe is also a New York resident.  (Tschoe, 20 Civ. 7331, Dkt.

No. 1-1 (Cmplt.) ¶ 2)  She has an "Amazon-branded [store] account" credit card issued by

Synchrony Bank.  (Id., Dkt. No. 33 (Pltf. R. 56.1 Counterstmt.) ¶ 1)  At some point before July

14, 2020, she incurred a debt of $1,529.66 to Synchrony Bank.  (Id., Dkt. No. 30-3 (Mazzacano

Decl., Ex. C) (Monarch July 16, 2020 Ltr. to Tschoe); Dkt. No. 33 (Pltf. R. 56.1 Counterstmt.) ¶¶

1-2)  On July 14, 2020, Synchrony Bank transferred the debt to Monarch for purposes of

collection.  (Id., Dkt. No. 33 (Pltf. R. 56.1 Counterstmt.) ¶ 1)

**B.**   **Monarch's Collection Letters**

Monarch sent a debt collection letter to Plaintiff Goldring on June 18, 2020

(Goldring, 20 Civ. 7893, Dkt. No. 46-3 (Mazzacano Decl., Ex. C) (Monarch June 18, 2020 Ltr.

to Goldring)), and sent the same form collection letter to Plaintiff Tschoe on July 16, 2020.

(Tschoe, 20 Civ. 7331, Dkt. No. 30-3 (Mazzacano Decl., Ex. C) (Monarch July 16, 2020 Ltr. to

Tschoe))[2]

---

[2] The collection letters sent to Goldring and Tschoe are essentially identical, except as to date,
name, address, reference numbers, the debt owed, and the creditor.  (Compare Goldring, 20 Civ.
7893, Dkt. No. 46-3 (Monarch June 18, 2020 Ltr. to Goldring) with Tschoe, 20 Civ. 7331, Dkt.
No. 30-3 (Monarch July 16, 2020 Ltr. to Tschoe))

1.    <u>**Monarch's June 18, 2020 Letter to Goldring**</u>

Goldring read Monarch's June 18, 2020 letter "as soon as [he] opened up the envelope."  (<u>Goldring</u>, 20 Civ. 7893, Dkt. No. 46-6 (Mazzacano Decl., Ex. F (Goldring Dep.)) at 17:1-17:6)  The one-page letter has three parts.

At the top of the letter is a perforated tear-off sheet for the consumer – in this instance, Goldring – to use in making payment to Monarch.

Below that is an "account information" block containing the following information:

Date of Letter:  June 18, 2020

Account Reference [Number]:  . . . 0521

Monarch Reference [Number]: . . . 3059

Balance:  $7,726.56

Creditor:  FIRST PORTFOLIO VENTURES I, LLC

Additional Information:  BARCLAYS BANK DELAWARE

Below the account information section is the following text:

This is to advise you that your account has been transferred to our office for collection by FIRST PORTFOLIO VENTURES I, LLC.

The account balance is $7726.56.

Unless you notify this office verbally or in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume that this debt is valid.  If you notify this office verbally or in writing within 30 days from receipt of this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment and mail it to you.  If you request of this office verbally or in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.  You can contact Monarch using any phone number or any address listed on this letter.

This is an attempt by a debt collector to collect a debt.  Any information obtained will be used for that purpose.  This communication is from a debt collector.

If you have a complaint about the way we are collecting this debt, please write to our Compliance Center at 3260 Tillman Drive, Suite 75, Bensalem, PA 19020, email us at compliance@monarchrm.com, or call us toll-free at 1-800-220-0605 ext. 2261, between 9:00 A.M. Eastern Time and 5:00 P.M. Eastern Time Monday-Friday.

Yours truly,

Matt Fithian Debt Collector
Toll Free 844-280-6009

(Id.) (emphasis in original).

The last section of the letter sets forth information regarding the FDCPA – including limitations that it imposes on debt collectors – and the following disclosures:

The total amount of the debt due as of charge off:  $7726.56.
Total amount of interest accrued since charge off:  $0.00.
Total amount of non-interest charges/fees accrued since charge off:  $0.00.
Total amount of payments made on the debt since charge off:  $0.00.

(Id.)

Goldring did not notify Monarch – either verbally or in writing – that he disputed the debt.  (Id., Dkt. No. 57 (Monarch R. 56.1 Counterstmt.) ¶¶ 8-10; Dkt. No. 46-6 (Goldring Dep.) at 19:18-20:7)

### 2.    July 16, 2020 Letter to Plaintiff Tschoe

On July 16, 2020, Monarch sent the same form collection letter to Tschoe. (Tschoe, 20 Civ. 7331, Dkt. No. 33 (Pltf. R. 56.1 Counterstmt.) ¶ 2)  Although the letter reflects Tschoe's name, it was mailed to an address for United Settlement, a company that "settle[s]" or resolves debts for customers.  (Id. ¶ 10; id., Dkt. No. 30-5 (Mazzacano Decl., Ex. E (Tschoe Dep.)) at 28:17-29:11)  Tschoe "engage[d] United Settlement" in 2019 to help "settle" debt she owed on "three" "credit cards."  (Id., Dkt. No. 30-5 (Mazzacano Decl., Ex. E (Tschoe Dep.)) at 29:9-30:20))  According to Tschoe, United Settlement emailed Monarch's July 16, 2020 letter to her "[s]ometime [in] late July."  (Id. at 32:4-24, 33:20-34:16; id., Dkt. No. 33 (Pltf. R. 56.1

Counterstmt.) ¶¶ 11, 12)  Tschoe read the letter when she received it.  (Id., Dkt. No. 30-5

(Mazzacano Decl., Ex. E (Tschoe Dep.)) at 35:1-5)

        The format of the letter to Tschoe is identical to the format used in Monarch's

letter to Goldring.  At the top of the one-page letter is the perforated tear-off sheet for the

consumer to make payment.  (Id., Dkt. No. 30-3 (Monarch July 16, 2020 Ltr. to Tschoe))

        Below the tear-off sheet is a block entitled "Account Information" that contains

the following information:

> Date of Letter:  July 16, 2020
>
> Account Reference [Number]:  . . . 8851
>
> Monarch Reference [Number]:  . . . 4993
>
> Balance:  $1,529.66
>
> Creditor:  SYNCHRONY BANK
>
> Additional Information:  Amazon Synchrony Bank

(Id.)

        The text of Monarch's July 16, 2020 letter to Tschoe reads as follows:

> This is to advise you that your account has been transferred to our office for
> collection by SYNCHRONY BANK.
>
> The account balance is $1529.66.
>
> Unless you notify this office verbally or in writing within 30 days after receiving
> this notice that you dispute the validity of this debt, or any portion thereof, this
> office will assume that this debt is valid.  If you notify this office verbally or in
> writing within 30 days from receipt of this notice that the debt, or any portion
> thereof, is disputed, this office will obtain verification of the debt or a copy of the
> judgment against the consumer and a copy of such verification or judgment and
> mail it to you.  If you request of this office verbally or in writing within 30 days
> after receiving this notice, this office will provide you with the name and address
> of the original creditor, if different from the current creditor.  You can contact
> Monarch using any phone number or any address listed on this letter.
>
> This is an attempt by a debt collector to collect a debt.  Any information obtained
> will be used for that purpose.  This communication is from a debt collector.

7

If you have a complaint about the way we are collecting this debt, please write to our Compliance Center at 3260 Tillman Drive, Suite 75, Bensalem, PA 19020, email us at compliance@monarchrm.com, or call us toll-free at 1-800-220-0605 ext. 2261, between 9:00 A.M. Eastern Time and 5:00 P.M. Eastern Time Monday-Friday.

Yours truly,

Matt Fithian Debt Collector
Toll Free 844-280-6009

(Id.) (emphasis in original).

As in Monarch's letter to Goldring, the last section of Monarch's letter to Tschoe sets forth information regarding the FDCPA – including limitations that it imposes on debt collectors – and the following disclosures:

> The total amount of the debt due as of charge off: $1529.66.
> Total amount of interest accrued since charge off: $0.00.
> Total amount of non-interest charges/fees accrued since charge off: $0.00.
> Total amount of payments made on the debt since charge off: $0.00.

(Id.)

Like Goldring, Tschoe did not notify Monarch that she disputed the debt. (Id., Dkt. No. 33) (Pltf. R. 56.1 Counterstmt.) ¶¶ 6-8) At deposition, Tschoe testified that she "do[es]n't know" if she "still owe[s] a balance to Synchrony [] regarding [her] Amazon account." (Id., Dkt. No. 30-5 (Tschoe Dep.) at 27:15-17)

## II.  PROCEDURAL HISTORY

On July 21, 2020, the Goldring Complaint was filed in Supreme Court of the State of New York, Rockland County, as a putative state-wide class action. (Goldring, 20 Civ. 7893, Dkt. No. 1-1 (Cmplt.) at 1, ¶¶ 13-32) On August 11, 2020, the Tschoe Complaint was filed in Civil Court of the City of New York, County of New York, on an individual basis. (Tschoe, 20 Civ. 7331, Dkt. No. 1-1 (Cmplt.) at 1)

Monarch removed Tschoe to this District on September 9, 2020, and Monarch removed Goldring to this District on September 24, 2020. Removal was premised on federal

8

question jurisdiction. (Id., Dkt. No. 1 (Notice of Removal) at 2; Goldring, 20 Civ. 7893, Dkt. No. 1 (Notice of Removal) at 2)  The two cases were assigned to this Court as related.  (Sept. 29, 2020 Minute Entry (Docket Report for 20 Civ. 7893))

Both complaints allege that Monarch violated the FDCPA by sending debt collection letters to consumers stating that they can "obtain verification of the debt" or obtain "the name and address of the original creditor" by making a request to Monarch for this information either "verbally or in writing."  (See Goldring, 20 Civ. 7893, Dkt. No. 1-1 (Cmplt.) ¶¶ 9-12, 34; Tschoe, 20 Civ. 7331, Dkt. No. 1-1 (Cmplt.) ¶¶ 10-11, 13, 23-26, 28)  According to Plaintiffs, the reference to a verbal communication misstates FDCPA requirements, see 15 U.S.C. §§ 1692g(a)(4) (requiring that "[a] consumer notif[y] the debt collector in writing" to "obtain verification of the debt"), 1692g(a)(5) (requiring a timely "written request" to trigger debt collector's obligation to "provide the consumer with the name and address of the original creditor"), and constitutes a "false representation" in connection with Monarch's collection of a debt.  See id. § 1692e(10) (prohibiting "the use of false representation or deceptive means to collect . . . any debt").

In Tschoe's complaint, she adds that Monarch violated the FDCPA by "fail[ing] to identify the current creditor to whom the debt is owed" in the July 16, 2020 letter.  (Tschoe, 20 Civ. 7331, Dkt. No. 1-1 (Cmplt.) ¶¶ 14-16, 29-30); see also 15 U.S.C. §§ 1692g(a)(2) (requiring a debt collector to disclose "the name of the creditor to whom the debt is owed"), 1692e (prohibiting "false, deceptive, or misleading representation or means in connection with the collection of any debt").  Tschoe further complains that Monarch's letter "overshadow[s] or [is] inconsistent with the disclosure of [her] right to dispute the debt or request the name and address of the original creditor."  (Tschoe, 20 Civ. 7331, Dkt. No. 1-1 (Cmplt.) ¶¶ 12, 27); see also 15

U.S.C. § 1692g(b) (providing that "[a]ny collection activities and communication within 30 [days after the consumer's receipt of the notice] may not overshadow or be inconsistent with the disclosure of the consumer's right[s]").

Both complaints seek statutory and actual damages, as well as an award of attorneys' fees and costs.  (Tschoe, 20 Civ. 7331, Dkt. No. 1-1 (Cmplt.) ¶ 31, at 8-9 (alleging $10,000.00 in actual damages); Goldring, 20 Civ. 7893, Dkt. No. 1-1 (Cmplt.) at 7 (seeking an unspecified amount in actual damages)); see 15 U.S.C. § 1692k (imposing liability on debt collectors that "fail to comply with any provision of this [Act]").  Goldring has since "stipulate[d] that [he is] only seeking statutory damages at this point in the case for [himself] and the class."  (Goldring, 20 Civ. 7893, Dkt. No. 46-6 (Mazzacano Decl., Ex. F (Goldring Dep.)) at 30:3-10); see also id., Dkt. No. 46-8 (Mazzacano Decl., Ex. H (Pltf. Resp. to Def. First Set of Interrogatories)) ¶ 22) (stating that "[e]ach class member is seeking statutory damages from [Monarch] for the violation of their rights under the FDCPA"))

On November 23, 2021, and November 29, 2021, Monarch moved for summary judgment in each case.  (Id., Dkt. No. 44; Tschoe, 20 Civ. 7331, Dkt. No. 28)  On December 20, 2021, Goldring cross-moved for summary judgment.  (Goldring, 20 Civ. 7893, Dkt. No. 52)

That same day, Goldring moved for class certification pursuant to Fed. R. Civ. P. 23(b)(3).  (Id., Dkt. No. 50)  The putative class is "[a]ll consumers in the State of New York with the . . . creditor . . . First Portfolio Ventures I, LLC" who received collection notices from Monarch "within one year prior to the filing of [the Goldring] Complaint."  (Id., Dkt. No. 51 (Goldring Class Cert. Br.) at 7)

## DISCUSSION

### I.   STANDING

"'The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance.  This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise.'"  United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128 (2004)).  To establish constitutional standing, a plaintiff seeking damages "must show (1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  A "concrete" injury must be "'real,' and not 'abstract,'" Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (quoting Webster's Third New International Dictionary 472 (1971)), and any alleged "particularized" injury "'must affect the plaintiff in a personal and individual way.'"  Id. (quoting Lujan, 504 U.S. at 560 n.1).

A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  Id. at 341.  Instead, in order to "sue [a] private defendant over [an alleged statutory] violation in federal court," a plaintiff must demonstrate that he has "been concretely harmed by [the] defendant's statutory violation."  TransUnion, 594 U.S. at 427 (emphasis in original); id. at 426 ("'Article III standing requires a concrete injury even in the context of a statutory violation.'") (quoting Spokeo, 578 U.S. at 341).  Traditional tangible harms, such as "physical or monetary injury to the plaintiff," "readily qualify as concrete injuries under Article III."  Id. at 425.  Intangible harms, such as "reputational harms, disclosure of private information, and intrusion upon seclusion," and "harms specified by the Constitution itself," may also be

"concrete." Id.  In deciding whether a harm is "concrete," the question is "whether the alleged

injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a

basis for a lawsuit in American courts." Id. at 424-25 (quoting Spokeo, 578 U.S. at 341).  And

while Congress's view as to whether a harm is sufficiently concrete to qualify as an injury in fact

"must [be] afford[ed] due respect," id. at 425, "an injury in law is not an injury in fact" for

purposes of constitutional standing. Id. at 427.

      The Second Circuit considered the reach of TransUnion in Maddox v. Bank of

New York Mellon Tr. Co., N.A., 19 F.4th 58 (2d Cir. 2021).  In that case, plaintiffs sued a

mortgage lender, alleging that the lender had not filed "a satisfaction of mortgage" within the

thirty-day period specified in New York statutes.  Such a violation rendered the lender "liable to

the mortgagor" for statutory damages. Id. at 60 (citing N.Y. Real P. Law § 275 and N.Y. Real P.

Actions & Proc. L. § 1921).  In an opinion issued before TransUnion, the Second Circuit ruled

that the New York statutes "created substantive right[s]," and therefore the plaintiffs "need allege

no harm greater than that their discharge was untimely recorded – the invasion of their statutory

right under New York law – to establish a concrete, intangible injury of the sort that gives them

Article III standing." Maddox v. Bank of New York Mellon Tr. Co., N.A., 997 F.3d 436, 447

(2d Cir. 2021), opinion withdrawn and superseded on reh'g, 19 F.4th 58 (2d Cir. 2021).

      After the Supreme Court issued its decision in TransUnion, the defendant lender

petitioned for rehearing, and rehearing was granted. See Maddox, 19 F.4th at 61, 66.  Applying

TransUnion on rehearing, the court concluded the plaintiffs lacked standing, because they did not

allege (1) tangible monetary harm, such as additional filing fees because of the lender's delayed

filings; (2) intangible reputational harm, such as the publication of false information to third

parties or adverse credit reporting; or (3) any emotional distress "[]commensurate with the

stimulant." Id. at 64-66.  The Second Circuit held that plaintiffs suing for damages "cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm." Id. at 64.

While the Second Circuit has not applied TransUnion in the context of FDCPA claims, district courts in the Circuit have "uniformly" interpreted Maddox to hold that, "absent specific evidence of reputation or monetary harm, plaintiffs lack standing" in claims "brought pursuant to [] the FDCPA."  Adler v. Penn Credit Corp., No. 19-CV-7084 (KMK), 2022 WL 744031, at *8 (S.D.N.Y. Mar. 11, 2022) (collecting cases); Lopez v. Monarch Recovery Mgmt., Inc., No. 20-CV-3065 (WFK) (TAM), 2022 WL 4238623, at *2 (E.D.N.Y. Sept. 14, 2022) (sua sponte dismissing case at summary judgment for lack of subject matter jurisdiction where "Plaintiff [did] not allege a concrete harm beyond the . . . violations of the FDCPA itself"); Schmelczer v. Penn Credit Corp., No. 20-CV-2380 (KMK), 2022 WL 862254, at *7-8 (S.D.N.Y. Mar. 23, 2022) (finding at summary judgment that FDCPA plaintiff's testimony that collection letter caused him to be "confused" and "concerned" was not sufficient to establish standing); Williams v. Portfolio Recovery Assocs., LLC, No. 21-CV-5656 (DRH), 2022 WL 256510, at *2-3 (E.D.N.Y. Jan. 27, 2022) (ruling that FDCPA plaintiffs lacked standing where they alleged that defendant falsely stated to a third party vendor – but not "to the public at large" – that plaintiffs owed money to defendant; rejecting plaintiffs' claim that the alleged violation of their right to privacy constituted an "injury" for standing purposes); see also Gross v. TransUnion, LLC, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (ruling that FDCPA plaintiff lacked standing where his alleged injuries were "increased difficulty obtaining credit," "embarrassment, humiliation, and other emotional injuries").

A plaintiff must demonstrate standing "'in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" Cacchillo v. Insmed, Inc., 638 F.3d 401, 404 (2d Cir. 2011) (quoting Lujan, 504 U.S. at 561). In determining standing at the summary judgment stage, courts consider whether a plaintiff has "'set forth' by affidavit or other evidence 'specific facts,'" of injury resulting from the defendant's conduct. Lujan, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).

For purposes of class certification, "[a]t least one named plaintiff" must "demonstrate the requisite injury" to satisfy standing. Hyland v. Navient Corp., 48 F.4th 110, 117 (2d Cir. 2022); see also In re AXA Equitable Life Ins. Co. COI Litig., No. 16-CV-740 (JMF), 2023 WL 199284, at *1 (S.D.N.Y. Jan. 17, 2023) (same). In other words, a "'named plaintiff[] who represent[s] a class must allege and show that [he] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class to which [he] belong[s] and which [he] purport[s] to represent.'" Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 64 (2d Cir. 2012) (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)).

II.   **ANALYSIS**

As discussed above, in opposing Goldring's motion for class certification, Monarch contends, inter alia, that he lacks Article III standing.[3] (See Goldring, 20 Civ. 7893, Dkt. No. 39 (Def. Class Cert. Opp.) at 9) According to Monarch, "[t]here is no evidence that

---

[3]  "[S]tanding is the threshold question in every federal case," Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008) (quotations omitted), and is generally "a prerequisite to class certification." Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n, 986 F. Supp. 2d 412, 419 n.3 (S.D.N.Y. 2013). Although there is a limited exception for cases in which class certification is "logically antecedent" to the determination of standing, see Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999), that exception does not apply here, because "resolution of class certification [would not] obviate[] the need to decide issues of Article III standing." Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 65 (2d Cir. 2012).

[Goldring] was harmed in any way by Monarch's June 18, 2020 letter," and therefore he has not shown a concrete injury as required under TransUnion, 594 U.S. at 424-30.  (Id.)

And while Monarch has not raised the issue of standing with respect to Plaintiff Tschoe, as the cases cited earlier make clear, this Court is obligated to sua sponte raise the issue where standing appears to be lacking.  Green Haven Prison, 16 F.4th at 78 (noting that courts "'are entitled at any time sua sponte to delve into the issue' of standing even if defendants do not raise the issue") (quoting Transatlantic Marine, 109 F.3d at 108); Lopez, 2022 WL 4238623, at *1 (dismissing FDCPA action sua sponte for lack of standing); Juliano, 626 F. Supp. 2d at 318 (noting courts "unflagging duty to raise the issue [of subject matter jurisdiction] sua sponte whenever jurisdiction appears to be lacking").

As discussed above, a plaintiff alleging a statutory violation must plead facts in the complaint, and offer evidence at summary judgment, showing that he, she, or it suffered an injury that "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts."  TransUnion, 594 U.S. at 424-25 (quoting Spokeo, 578 U.S. at 341).

### A.    Plaintiff Goldring's Standing

As to injury and damages, Goldring's complaint contains the following allegations:  Monarch's June 18, 2020 letter "confuses and misleads the consumer about his mandatory rights under the FDCPA."  (Goldring, 20 Civ. 7893, Dkt. No. 1-1 (Notice of Removal, Ex. A (Cmplt.)) ¶ 9)  And "[a]bsent a class action, the Class members will continue to suffer losses borne from the Defendant's breaches of Class members' statutorily protected rights as well as monetary damages."  (Id. ¶ 31)  In the Complaint's ad damnum clause, Goldring asserts a right to "actual and statutory damages."  (Id. at 7)  In sum, Goldring's Complaint does

15

not plead any sort of harm or injury that is cognizable under <u>TransUnion.</u>  The Complaint therefore does not assert a basis for standing.

At deposition, Goldring repeated his assertion that he was "confused" by Monarch's June 18, 2020 debt collection letter "based on . . . [his] knowledge that disputing a debt by phone" would invoke his rights to "validat[e]" his debt.  (<u>Id.</u>, Dkt. No. 46-6 (Goldring Dep.) at 23:24-24:10, 25:24-26:25).  There is no evidence, however, that Goldring relied on Monarch's letter in any way; he does not allege that he sought – either verbally or in writing – to verify his debt or determine the original creditor.  Indeed, the record shows that "[a]t no time did [Goldring] . . . dispute his debt obligation with [Defendant]."  (<u>Id.</u>, Dkt. No. 57 (Pltf. R. 56.1 Counterstmt.) ¶¶ 8-10; <u>id.</u>, Dkt. No. 46-6 (Goldring Dep.) at 24:4-19) (Goldring testifying that he "didn't do any kind of dispute," either verbally or in writing))  And at deposition, Goldring testified that he did not suffer "any type of physical harm" or "mental anguish," did not "see any doctors" or "medical professionals," or "take any type of medication," and was not "decline[d]" from "credit lines" as a result of Monarch's June 18, 2020 letter.  (<u>Id.</u>, Dkt. No. 46-6 (Goldring Dep.) at 29:2-25)  In sum, there is no evidence in the record that, as a result of Monarch's debt collection letter, Goldring suffered a harm or injury cognizable under <u>TransUnion.</u>

In arguing that he has standing, Goldring contends that FDCPA Sections 1692g(a)(4) and (a)(5) "provide substantive rights to consumers," the violation of which is sufficient – even after <u>TransUnion</u> – to "'entail the concrete injury necessary for standing.'" (<u>Goldring</u>, 20 Civ. 7893, Dkt. No. 58 (Goldring Class Cert. Reply) at 4 (quoting <u>Papetti v. Does 1-25</u>, 691 F. App'x 24, 26 (2d Cir. 2017))  Goldring further argues that this alleged injury has a close relationship to "the common law tort of . . . deceitful or misleading representations."  (<u>Id.</u> at 5)

In asserting that the FDCPA confers "substantive rights" – as opposed to procedural rights – that "Congress has sought to make redressable," Goldring cites only to cases that predate TransUnion.  (Id. at 4) (citing, inter alia, Papetti, 691 F. App'x at 26)  And the distinction that Goldring seeks to draw between substantive and procedural rights is not relevant to standing.  In Maddox, the Second Circuit acknowledges that, under TransUnion, courts "need [not] decide whether [a] statute[] [is] 'substantive' or 'procedural,'" because "the type of harm that a statute protects against is of little (or no) import [for standing purposes]." Maddox, 19 F.4th at 64 & n.2.

While Congress may enact a statute that provides consumers with a cause of action to sue a debt collector that fails to comply with the statute's requirements, courts must "independently decide whether a plaintiff has suffered a concrete harm" under the Constitution. TransUnion, 594 U.S. at 426.  "What matters is . . . [whether] plaintiff[] [can] show that the statutory violation caused [him] a concrete harm, regardless of whether the statutory rights violated were substantive or procedural." Maddox, 19 F.4th at 64 n.2; see also Kola v. Forster & Garbus LLP, No. 19-CV-10496 (CS), 2021 WL 4135153, at *8 (S.D.N.Y. Sept. 10, 2021) ("TransUnion suggests that it is impermissible for courts to rely on the conclusion that any violation of a given statute automatically establishes standing absent a more searching analysis of the injury.").  Accordingly, it is not sufficient for Goldring to claim a violation of a statutory right; he must establish that he "'did indeed suffer the sort of injury that would entitle [him] to relief.'" Maddox, 19 F.4th at 65-66 (quoting Harry v. Total Gas & Power N. Am., Inc., 889 F.3d 104, 110 (2d Cir. 2018)).

In attempting to show injury, Goldring contends that he was "confused" by Monarch's June 18, 2020 letter "based on . . . [his] knowledge that disputing a debt by phone"

would invoke his rights to "validat[e]" his debt.  (<u>Goldring</u>, 20 Civ. 7893, Dkt. No. 46-6 (Goldring Dep.) at 23:24-24:3)  But Goldring's alleged "'state of confusion is not itself an injury' for purposes of Article III."  <u>Clarke v. McCabe, Weisburg & Conway, LLC</u>, No. 22-CV-3289 (RPK) (PK), 2022 WL 3030347, at *2 (E.D.N.Y. Aug. 1, 2022) (dismissing FDCPA putative class action where plaintiff alleged FDCPA violations but alleged no concrete injury) (quoting <u>Pennell v. Glob. Tr. Mgmt., LLC</u>, 990 F.3d 1041, 1045 (7th Cir. 2021)); <u>see also</u> <u>Adler</u>, 2022 WL 744031, at *9 (granting defendant summary judgment on plaintiff's FDCPA claims; evidence that defendant's debt collection letter caused plaintiff "'confus[ion]'" and "'frustrat[ion],'" which in turn caused a "number of headaches," was insufficient to establish concrete injury) (quoting deposition transcript); <u>Wolkenfeld v. Portfolio Recovery Assocs.</u>, LLC, No. 22-CV-1156 (PKC) (CLP), 2022 WL 1124828, at *2 (E.D.N.Y. Apr. 14, 2022) (dismissing FDCPA claim where plaintiff alleged that "he 'was concerned and confused by the [debt collection] letter,' was 'unable to evaluate his options of how to handle this debt,' and 'expended time and money in determining the proper course of action'"; holding that these allegations were insufficient to demonstrate Article III standing) (quoting the complaint).

       Goldring also argues that he is excused from showing a concrete harm or injury because Monarch's alleged FDCPA violations have an "obvious connection" to the "common law tort of fraudulent misrepresentation."  (<u>Goldring</u>, 20 Civ. 7893, Dkt. 58 (Pltf. Class Cert. Reply) at 5)  Even assuming <u>arguendo</u> that such an argument survives under <u>TransUnion</u>, the tort of fraudulent misrepresentation requires, <u>inter alia</u>, reasonable reliance and damages suffered as a "'result of such reliance,'" <u>Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.</u>, 375 F.3d 168, 186-87 (2d Cir. 2004) (quoting <u>Banque Arabe et Internationale D'Investissement</u>

v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995)), and Goldring has not pled or proffered evidence of either.

        An FDCPA plaintiff must "'plead enough facts to make it plausible that [he] did indeed'" reasonably rely on the debt collector's misrepresentation and that as a result he "'suffer[ed] the sort of injury that would entitle [him] to relief.'" Maddox, 19 F.4th at 65-66 (quoting Harry, 889 F.3d at 110); see also Friedman v. Cavalry Portfolio Servs., LLC, No. 23-CV-0304 (BMC), 2023 WL 3708996, at *3 (E.D.N.Y. May 30, 2023) (finding no injury in fact where FDCPA complaint did not plead facts demonstrating that plaintiff "plausibly rel[ied] on defendant['s] representation to [his] own detriment"); Kola, 2021 WL 4135153, at *6-7 (dismissing FDCPA claim where plaintiff alleged that debt collection letter "was confusing or misleading" but did not allege "that she relied on the letter in making any decision about paying the debt"; "'A representation is not actionable unless the plaintiff in fact relies upon it. . . . If the plaintiff has not relied, the misrepresentation has caused no harm.'") (quoting Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 671 (2d ed. 2021)); Ciccone v. Cavalry Portfolio Servs., LLC, No. 21-CV-2428 (JS) (JMW), 2021 WL 5591725, at *5 (E.D.N.Y. Nov. 29, 2021) (dismissing FDCPA claim for lack of standing because "[p]laintiff does not allege . . . that he relied on [the debt collection letter] to his detriment in any way").

        The Court concludes that Goldring has not pled or proffered evidence of an injury in fact sufficient to confer Article III standing. See TransUnion, 594 U.S. at 440 (characterizing claims such as Goldring's as "'bare procedural violation[s], divorced from any concrete harm'") (quoting Spokeo, 578 U.S. at 341).

**B.**    **Plaintiff Tschoe's Standing**

        While Plaintiff Tschoe's Complaint seeks "actual damages" and statutory damages, and a "judgment in the sum of $10,000," Tschoe, 20 Civ. 7331, Dkt. No. 1-1 (Notice

of Removal, Ex. A (Cmplt.) at 8), the Complaint pleads no facts stating or suggesting that Tschoe suffered any sort of concrete harm or injury.

At deposition, Tschoe claimed that she suffered "emotional damages," because she received Monarch's July 16, 2020 debt collection letter during "a pandemic," which "was a very nerve-wracking time." (Id., Dkt. No. 30-5 (Tschoe Dep.) at 25:6-16; see also id. at 26:12-14 (asserting "just emotional" harm, but not "any physical pain or suffering")) Tschoe "didn't go to a doctor" to treat her alleged emotional injury. (Id. at 25:17-26:18)

Courts routinely reject such "perfunctory allegation[s] of emotional distress" as "insufficient to plausibly allege constitutional standing." Maddox, 19 F.4th at 66; see also Spitz v. Caine & Weiner Co., Inc., No. 23-CV-7853 (PKC) (CLP), 2024 WL 69089, at *3 (E.D.N.Y. Jan. 5, 2024) (dismissing FDCPA claim for lack of standing, because plaintiff's allegations that she was "confused an[d] unable to pay [the] debt" and suffered "increased heartrate, difficulty with sleep, anxiety, and stress associated with . . . fear" were "insufficiently concrete for Article III standing"); Gross, 607 F. Supp. 3d at 273 (plaintiff's "conclusory allegations" in FDCPA complaint that he suffered "embarrassment, humiliation, and other emotional injuries" "are insufficient to demonstrate Article III standing") (collecting cases).

In sum, Tschoe does not plead facts demonstrating that she suffered a harm or injury that would provide a basis for Article III standing, and the record before this Court does not demonstrate that any such facts exist.

## CONCLUSION

Plaintiffs Goldring and Tschoe have not pled or proffered evidence demonstrating a basis for standing. Absent a plaintiff who has Article III standing, this Court lacks subject matter jurisdiction. Accordingly, Defendant Monarch's motions for summary judgment (Goldring, 20 Civ. 7893, Dkt. No. 44; Tschoe, 20 Civ. 7331, Dkt. No. 28) are denied without

prejudice, and Plaintiff Goldring's motions for summary judgment and for class certification (Goldring, 20 Civ. 7893, Dkt. Nos. 50, 52) are denied without prejudice.

By **April 5, 2024**, Plaintiffs Goldring and Tschoe will show cause why their FDCPA claims should not be dismissed for failure to plead facts or proffer evidence demonstrating Article III standing.  See, e.g., Adler, 2022 WL 744031, at *11 (granting defendant summary judgment where plaintiff "has not demonstrated any concrete injury sufficient to support standing under the Second Circuit's precedent in Maddox").  Defendant Monarch will respond to Plaintiffs' show cause papers by **April 19, 2024.**

The Clerk of Court is directed to terminate the motions pending in Goldring, 20 Civ. 7893 (PGG) (Dkt. Nos. 44, 50, 52) and Tschoe, 20 Civ. 7331 (PGG) (Dkt. No. 28).

Dated: New York, New York
           March 22, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge